UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

<u>Nancy Keith McFall</u>

v.                                    Case No. 15-cv-160-PB
                                      Opinion No. 2016 DNH 049

<u>Carolyn W. Colvin,</u>
<u>Acting Commissioner,</u>
<u>U.S. Social Security</u>
<u>Administration</u>

<u>MEMORANDUM AND ORDER</u>

In June 2012, Nancy Keith McFall applied for disability insurance benefits ("DIB"), alleging disability as of April 30, 1989.  The SSA initially denied McFall's claim in August 2012, and denied her claim again upon reconsideration in November 2012.  Thereafter, a hearing was held before an Administrative Law Judge ("ALJ"), where McFall, represented by counsel, appeared and testified.  The ALJ then issued a written decision finding that McFall had failed to show that she suffered from a severe impairment before her March 31, 1997 date last insured, or through the date of the ALJ's decision.  The ALJ therefore concluded that McFall was not disabled.  McFall now challenges the Social Security Administration's decision to deny her claim. The Social Security Commissioner, in turn, seeks to have the ruling affirmed.

## I.    BACKGROUND

### A.   Medical Evidence and Hearing Testimony

McFall applied for DIB on June 15, 2012, alleging
disability as of April 30, 1989.  Tr. at 19 (Doc. No. 7).
McFall last met the Social Security Act's insured status
requirement on March 31, 1997, and there are no medical records
predating her March 31, 1997 date last insured ("DLI").  Rather,
the first treatment notes in the record were from June 1997
(several months after her DLI), when McFall was admitted to
Pembroke Hospital due to bipolar affective disorders,
psychiatric disorders not otherwise specified, polysubstance
abuse, increased anxiety, difficulty sleeping and suicidal
ideation.  Tr. at 22, 161, 164.  Before that admission, McFall
had undergone no psychiatric treatment.  Tr. at 161.

At the hospital, McFall reported that she had suffered a
head injury as a teenager, and that, for several years before
June 1997, she had engaged in substance abuse and experienced
paranoid ideation.  Tr. at 159.  McFall was diagnosed with
bipolar disorder and polysubstance abuse and placed on a
fourteen-day treatment plan.  Tr. at 159, 162.  Upon discharge,
she was described as alert, partially cooperative, with
continued paranoid ideas, irritable mood, and fair judgment.
Tr. at 159.  McFall was referred to Northeast Psychological

2

Associates for further treatment, but there are no records
indicating that she followed through with that referral.  Tr. at
22, 159-60.

At her October 13, 2013 hearing before the ALJ, McFall
described the circumstances surrounding her June 1997 treatment
at Pembroke Hospital.  She testified that she had had problems
sleeping since she was involved in a car accident as a teenager,
and continued to have problems sleeping as of the date of her
hearing.  Tr. at 39-41.  She stated that she was diagnosed with
bipolar disorder in 1997 (presumably at Pembroke Hospital), and
testified that the condition significantly affected her ability
to function on a daily basis.  Tr. at 53.  She also told the ALJ
that, at around that same time she was hospitalized, she had
increased her alcohol consumption.  Tr. at 53.  When asked about
the suicidal ideations, depression and anxiety mentioned in the
Pembroke Hospital notes, McFall said that she "went through that
for a short period," and that she "couldn't do anything" while
affected.  Tr. at 54.

Based on the evidence before the ALJ, there were no
additional treatment records until May 2012, about one month
before McFall applied for DIB.[1]  In May 2012, McFall sought

_____

[1] After the ALJ issued his decision, McFall submitted additional
records to the Appeals Council.  Those records suggested that,
from approximately September 2008 until 2012, McFall underwent
treatment with APRN Mary Warren in Nashua, New Hampshire.  Tr.

treatment for abdominal swelling and discomfort and chronic
diarrhea.  Tr. at 258.  McFall was diagnosed with hepatic
failure due to alcohol use.  Tr. 263.  In July 2012, McFall was
again treated for abdominal pain and distention.  Tr. 252-53.
At her October 2013 hearing, McFall testified that these
abdominal symptoms have since been resolved, and stated that she
no longer drinks alcohol.  Tr. at 35, 50.

**B.  ALJ's Decision**

In his decision, the ALJ evaluated McFall's claim under the
five step sequential process described in 20 C.F.R. §

---

at 61-64.  According to APRN Warren's notes, McFall had ongoing
sleep problems, was taking antipsychotic medications, rarely
left her home, and was struggling with weight gain.  Tr. at 61-
64.  In its letter denying McFall's request for review, the
Appeals Council noted that it had "looked at medical records
from Mary H. Warren, APRN," but nonetheless denied McFall's
request.  Tr. at 2.

In reviewing the Commissioner's decision, I am limited to
considering the evidence that was submitted to the ALJ.  See
Mills v. Apfel, 244 F.3d 1, 5 (1st Cir. 2001).  When a claimant
submits evidence in the first instance to the Appeals Council,
and the Appeals Council denies the claimant's request for
review, I may reverse that decision only if the Council gave "an
egregiously mistaken ground for this action."  Id.
"Alternatively, the court may remand a case for further
consideration if material new evidence is submitted and the
party introducing the evidence shows good cause for failing to
present that evidence to the ALJ."  Larocque v. Barnhart, 468 F.
Supp. 2d 283, 287 (D.N.H. 2006).  In this case, McFall,
represented by counsel, does not mention APRN Warren's notes,
let alone assert that the Appeals Council committed an
"egregious" error in denying her request for review.  Likewise,
she does not argue that there was good cause for her failure to
present APRN Warren's treatment notes to the ALJ.  I therefore
do not consider APRN Warren's notes here.

4

404.1520(a)(4).  At step one, the ALJ found that McFall had not engaged in substantial gainful activity during the period from her alleged onset date through her DLI.  Tr. at 21.  The ALJ then resolved the case at step two, determining that McFall had not established that she suffered from a severe medically determinable impairment at any time from her alleged onset date through her DLI.

To support this conclusion, the ALJ explained that McFall had "experienced an acute episode in June 1997," at which time she "had medically determinable impairments that could reasonably produce work-related functional limitations."  Tr. at 23.  The ALJ also noted that, in June 1997, McFall described "symptoms of paranoia and substance abuse dating back one to two years" and "being unable to work for the previous three years."  Tr. at 22.  The ALJ concluded, however, that this evidence was inadequate to establish a medically determinable impairment because "there is no evidence to support this degree of symptomology or limitations prior to the date last insured," and because the record contained no evidence of follow-up treatment after McFall's hospitalization.  Tr. at 23.  According to the ALJ, that lack of follow-up "suggests that [McFall's] symptoms had largely resolved."  Tr. at 23.

With respect to McFall's history of substance abuse, the ALJ noted that McFall "did admit that she was abusing substances

5

during the period of her hospitalization in June 1997, as well
as subsequently," and that she was diagnosed with alcoholic
hepatitis and portal hypertension in June 2012.  Tr. at 23.  The
ALJ thus found "sufficient support in the limited evidence of
record that [McFall] does have some issues with substance
abuse."  Tr. at 23.  Nonetheless, in light of the limited record
evidence, and the absence of "evidence documenting higher
functioning absent substance abuse and a significant
deterioration with such abuse," the ALJ concluded that there was
insufficient support to find that McFall's alcohol abuse was
material to the finding of disability, "or that it produces any
specific work-related functional limitations throughout the
period under review."  Tr. at 23.

    The ALJ further concluded that, even if there was
sufficient evidence that McFall was disabled before her DLI,
McFall's claim nonetheless failed because McFall did not "have
disability continuing to the present date or ending within the
12-month period in which she applied," as required by 20 C.F.R.
§ 404.315.  Tr. at 23.  According to the ALJ, "the record
contains no evidence whatsoever for fifteen years prior to the
application date.  Even as of the application date, the record
contains only a few brief notes from May 2012 to July 2012,
which fail to support any specific work-related functional

limitations." Tr. at 23. The ALJ was therefore "unable to find
[McFall] disabled." Tr. at 23.

In January 2014, McFall asked the Appeals Council to review
the ALJ's decision. Tr. at 12-15. The Appeals Council denied
McFall's request. Tr. at 1-4. As such, the ALJ's decision
constitutes the Commissioner's final decision, and this matter
is now ripe for judicial review.

## II.  **STANDARD OF REVIEW**

Pursuant to 42 U.S.C. § 405(g), I have the authority to
review the administrative record and the pleadings submitted by
the parties, and to enter a judgment affirming, modifying, or
reversing the final decision of the Commissioner. That review
is limited, however, "to determining whether the [Administrative
Law Judge] used the proper legal standards and found facts
[based] upon the proper quantum of evidence." Ward v. Comm'r of
Soc. Sec., 211 F.3d 652, 655 (1st Cir. 2000). I defer to the
Administrative Law Judge's (ALJ's) findings of fact, so long as
those findings are supported by substantial evidence. Id.
Substantial evidence exists "'if a reasonable mind, reviewing
the evidence in the record as a whole, could accept it as
adequate to support his conclusion.'" Irlanda Ortiz v. Sec'y of
Health & Human Servs., 955 F.2d 765, 769 (1st Cir. 1991) (per

7

curiam) (quoting Rodriguez v. Sec'y of Health & Human Servs., 647 F.2d 218, 222 (1st Cir. 1981)).

If the substantial evidence standard is met, the ALJ's factual findings are conclusive, even where the record "arguably could support a different conclusion." Id. at 770.  Findings are not conclusive, however, if the ALJ derived his findings by "ignoring evidence, misapplying the law, or judging matters entrusted to experts." Nguyen v. Chater, 172 F.3d 31, 35 (1st Cir. 1999) (per curiam).  The ALJ is responsible for determining issues of credibility and for drawing inferences from evidence in the record. Irlanda Ortiz, 955 F.2d at 769.  It is the role of the ALJ, not the court, to resolve conflicts in the evidence. Id.

### III.  ANALYSIS

Here, McFall challenges the ALJ's conclusion that she produced insufficient evidence that she suffered from a severe impairment before her DLI.  She contends that her 1997 Pembroke Hospital records, coupled with her testimony before the ALJ, satisfied her burden.  The Commissioner counters that substantial evidence supports the ALJ's conclusion that McFall did not have such an impairment.  The Commissioner further argues that the ALJ properly concluded that McFall failed to establish that she was disabled when she applied for DIB, or

suffered from a disability that ended within a twelve-month period before she applied.  McFall does not specifically address the ALJ's alternative basis for finding that McFall was not disabled.  For the reasons set forth below, I conclude that the ALJ permissibly found that McFall did not suffer from a severe impairment before her DLI.

At step two of the five-step evaluation process, the claimant bears the burden of proving "that [s]he has a medically severe impairment or combination of impairments."[2] Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987).  An impairment, or combination of impairments, is severe if it "significantly limits [the claimant's] physical or mental ability to do basic work activities" and "lasted or [is] expected to last for a continuous period of at least 12 months." 20 C.F.R. §§ 404.1520(c); 404.1509.  To establish the requisite impairment(s), "there must be medical signs and laboratory findings." 20 C.F.R. § 404.1529(a).  Thus, "[n]o symptom or combination of symptoms can be the basis for a finding of disability, no matter how genuine the individual's complaints may appear to be, unless there are medical signs and laboratory

---

[2] Although the claimant bears the burden of proving that she suffers from a severe impairment, the First Circuit has explained that "the step two severity requirement is intended to do no more than screen out groundless claims." May v. Soc. Sec. Admin. Comm'r, 125 F.3d 841, at *1 (1st Cir. 1997) (Table) (citation and internal punctuation omitted).

findings demonstrating the existence of a medically determinable physical or mental impairment." SSR 96-4p, 1996 WL 374187 (1996).

Moreover, a claimant is not entitled "to disability benefits unless [s]he can demonstrate that h[er] disability existed prior to the expiration of h[er] insured status." Cruz Rivera v. Sec'y of Health and Human Servs., 818 F.2d 96, 97 (1st Cir. 1986); see 20 C.F.R. § 404.131(a). It is not enough "for a claimant to establish that her impairment had its roots before the date that her insured status expired." Moret Rivera v. Sec'y Health & Human Servs., 19 F.3d 1427, at *5 (1st Cir. 1994) (Table). Instead, "the claimant must show that her impairment(s) reached a disabling level of severity" before her DLI. Id. An ALJ may, however, consider medical evidence generated after a claimant's DLI "for what light (if any) it sheds on the question whether claimant's impairment(s) reached disability severity before claimant's insured status expired."[3] Id. (emphasis in original).

---

[3] Although not raised by the parties, I note as an initial matter that SSR 83-20 does not require a remand here. As interpreted in this district, "SSR 83-20 ordinarily requires the ALJ to consult a medical advisor before concluding that a claimant was not disabled as of her date last insured." Fischer v. Colvin, 2014 DNH 227, 16-17. That general rule does not apply, however, in cases where the ALJ expressly finds that the claimant is not presently disabled. Lennon v. Colvin, 2015 DNH 153, 5-6; Wilson v. Colvin, 17 F. Supp. 3d 128, 142-43 (D.N.H. 2014). Here, the ALJ supportably found that McFall "was not under a disability .

In this case, substantial evidence supports the ALJ's
conclusion that McFall failed to show that was disabled before
her DLI.  First, as the ALJ noted, McFall did not produce any
medical records or other evidence predating her March 31, 1997
DLI.  Tr. at 22.  Second, the ALJ addressed McFall's post-DLI
records in detail, considering "what light (if any)," Moret
Rivera, 19 F.3d 1427, at *5, they shed on the severity of her
pre-DLI impairments.  Tr. at 22-23.  As the ALJ explained, those
records indicated that McFall (1) experienced an acute episode
several months after her DLI, (2) described certain symptoms
pre-dating her DLI, and (3) had some substance abuse issues.
Tr. at 22-23.  Yet, McFall presented no evidence to show that
she experienced the "degree of symptomology or limitations
[exhibited in June 1997] prior to the date last insured."  Tr.
at 23.  Indeed, the records indicate that McFall had not
undergone any psychiatric treatment before her post-DLI
hospitalization, Tr. at 161; and, when asked about the suicidal
ideations, depression and anxiety mentioned in the Pembroke
Hospital notes, McFall testified that she "went through that for

--------

. . . at any time from April 30, 1989 [McFall's alleged onset
date] . . . through the date of this decision."  Tr. at 24.
McFall does not challenge this conclusion.  See Doc. No. 8-1 at
4.  Thus, because the ALJ found that McFall was not presently
disabled, there was no need to consult a medical advisor to
determine a nonexistent onset date.  See Lennon, 2015 DNH 153,
6.

a short period." Tr. at 54 (emphasis added).  Third, the record
before the ALJ did not include any evidence that McFall sought
follow-up treatment after her 1997 hospitalization, or any
additional care until 2012.  See Tr. at 22.  This apparent
fifteen year gap in treatment was itself evidence that McFall
did not suffer from a severe impairment.[4]  See Moret Rivera, 19
F.3d 1427, at *5 ("A gap in the medical evidence may itself be
evidence that claimant's condition was not as dire as
alleged."); Irlanda Ortiz, 955 F.2d at 769 (same).  And fourth,
McFall presented no additional evidence – for instance, an
expert medical opinion – addressing whether her impairments were
"severe" before her DLI.

    In sum, it was McFall's burden to show that she suffered
from a severe impairment, or combination of impairments, before
March 31, 1997.  Although that burden is not particularly
onerous, see May, 125 F.3d 841, at *1, it nonetheless required
McFall to present "medical signs and laboratory findings" to
support her claim.  20 C.F.R. § 404.1529(a).  Yet, she produced
no records predating her DLI, no records covering the
approximately fifteen-year period after her DLI, and no opinion

---

[4] Again, as explained in greater detail in note 1, *supra*, the
records that McFall later submitted to the Appeals Council
indicate that she did, in fact, receive medical treatment
between 1997 and 2012.  Yet, because McFall (represented by
counsel) failed to submit that evidence to the ALJ, and under
the facts of this case, I may not consider those records here.

evidence regarding the severity of her impairments before her DLI.  The ALJ considered the limited evidence before him, and supplied a thorough explanation for why it was insufficient. Given that history, and under the facts of this case, the ALJ did not err in concluding that McFall failed to establish that her impairments "reached a disabling level of severity" before her DLI.  Moret Rivera, 19 F.3d 1427, at *5.  I therefore affirm.

## IV.  CONCLUSION

For the foregoing reasons, I grant the Commissioner's motion to affirm (Doc. No. 10), and deny McFall's motion to reverse (Doc. No. 9).  The clerk is directed to enter judgment accordingly and close the case.

SO ORDERED.

/s/Paul Barbadoro
Paul Barbadoro
United States District Judge

March 9, 2016

cc:  John A. Wolkowski, Esq.
     Terry Ollila, Esq.